IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND )<br><br>Plaintiff, )<br>v. )<br>THE TROAST GROUP, INC. )<br>Defendant. ) | )<br>)<br>)<br>)CIVIL ACTION NO. 05-1662 (ESH)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF THOMAS C. MONTEMORE

Thomas C. Montemore states under penalty of perjury that the following is true and correct:

1. I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund" or "Fund"). I have held that position since November 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2. The Pension Fund is an "employee benefit pension plan" as defined in § 3(2)(A)(I) of ERISA, as amended, 29 U.S.C. § 1002(2)(A)(I), established by the International Union of Painters and Allied Trades, AFL-CIO-CFL (" the International"), and employers in private industry whose employees are members of or otherwise represented by the International and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension Fund is administered in the District of Columbia from its principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

141342-1



3. A complete and accurate copy of the Agreement and Declaration of Trust of the Pension Fund is attached to the Complaint as Exhibit 1 and is incorporated herein by reference.

4. Defendant, The Troast Group, Inc. ("Company"), is a New Jersey corporation.

5. Company entered into collective bargaining agreements with Local Union 1976 ("Local 1976"). Local 1976 is a labor organization representing individuals employed in the painting and allied trades industry. The collective bargaining agreement requires Company to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreement. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

6. Based upon an audit conducted on June 2, 2005 covering the period January 2001 through March 31, 2005, Defendant owes $32,007.99 in unpaid contributions. Additionally, based upon remittance reports prepared by the Defendant and submitted to the Pension Fund and other records covering the period May 2004 through April 2005, Defendant owes contributions in at least the amount of $8,553.51. See, Pension Fund Report prepared by Peggy Gilbert, attached as Exhibit 2. Defendant failed to submit contributions and the required remittance reports for its employees for the month of September 2005. Since Defendant failed to submit the required remittance report, the Fund has estimated the Company owes contributions for this month in at least the amount of $718.58. This estimate is based on the average of the remittance reports filed for the three months immediately preceding the period for which no report(s) were filed. The average for the months in this time period is as follows:

160604-1

| Month | Amount |
|---|---|
| June 2005 | $ 910.96 |
| July 2005 | $ 565.42 |
| August 2005 | $ 679.36 |
| **Total** | **$2,155.74** |

**Estimated Monthly Contribution: $2,155.74/ 3 = $718.58 x 1 = $718.58**

7.   Defendant owes interest through October 31, 2005 in the amount of $2,845.30 on the unpaid pension contributions set forth in ¶ 6. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached to the Complaint as Exhibit 2 and incorporated herein by reference).

8.   Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendant in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through October 31, 2005 is $2,845.30. Twenty percent (20%) of Defendant's unpaid contributions amount ($41,280.08) is $8,256.00. Since the total amount of liquidated damages is greater than the interest amount, Company owes $8,256.00 in liquidated damages attributable to the unpaid contributions during the period January 2001 through April 2005 and the month of September 2005.

9.   ERISA and the Section 10.12 of the Plan allow other legal or equitable relief as the Court deems appropriate. Article VI, Sec. 4 of the Pension Fund's Agreement and Declaration of Trust provides for "late charges" in the form of interest on contributions paid more than twenty days after the due date and prior to litigation. Defendant owes $213.12 in late charges for the period March 2004 through May 2004.

160604-1

10. On June 2, 2005, the Pension Fund conducted an audit on Defendant's books and records for the period January 1, 2001 through March 31, 2005 which resulted in a delinquency of $32,007.99. Article VI, Section 6 of the Agreement and Declaration of Trust of the Pension Fund provides for recovery of audit costs in the event that an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. The audit performed revealed a delinquency and consequently Defendant owes $1,674.43.

11. Despite a continuing contractual obligation to do so, Defendant repeatedly has failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions and the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendant, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund

has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. The Defendant's refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendant to cover those benefits. Therefore, Defendant should be required to submit timely current contributions and remittance reports in the future.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Date: 11/10/05

THOMAS C. MONTEMORE

160604-1