IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND<br><br>Plaintiff,<br><br>vs.<br><br>THE TROAST GROUP, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:05Ccv01662-ESH<br>)<br>)<br>)<br>) |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
### MOTION TO VACATE DEFAULT JUDGMENT

Defendant, The Troast Group, Inc. ("Troast"), by and through its counsel, submits this reply memorandum in response to Plaintiff, International Painters and Allied Trades Industry Pension Fund's ("Fund") Memorandum of Law in Response to Defendant's Motion to Vacate Default Judgment ("Response"). As set forth further below, the Fund's arguments fail to establish a basis for this Court to deny Troast's Motion and, accordingly, Troast's Motion to Vacate Default Judgment should be granted.

### LAW AND ARGUMENT

**I.   Troast's Failure to File an Answer was not Willful**

Both parties acknowledge that the factors used by the courts to determine whether a default judgment should be vacated under Rule 60(b) are whether: 1) the default was willful; 2) the defendant has presented a meritorious defense; and 3) setting aside the judgment would prejudice the plaintiff. *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995). However, in its

Response, the Fund abandons the willfulness part of the test and focuses instead on whether the failure to file an Answer in this case was the result of "excusable neglect." *See* Response at 20-22. This approach simply ignores Troast's assertions that it did nothing wrong and that it diligently retained and relied on counsel to represent it in this matter and thus did not willfully fail to file an Answer here.

For example, in its initial memorandum, Troast pointed out that its original counsel actually attempted to file an Answer which was rejected by the Clerk's office only because counsel was not a member of the Bar of this Court; that Troast immediately sought new counsel and expected that such counsel would re-file the Answer within the time remaining; that Troast was surprised to receive a default judgment, believing that the Answer had already been re-filed; and that Troast immediately retained undersigned counsel to seek to vacate the default judgment and file an Answer. *See* Memorandum in Support of Motion to Vacate Default Judgment at 2. The Fund failed to challenge any of these facts in its Response, all of which demonstrate that there was no neglect on Troast's part whatsoever. Instead, the Fund asks this Court to focus exclusively on whether the actions of Troast's *counsel* in failing to file an Answer that complied with the Local Rules and then failing to re-file the Answer on a timely basis were excusable. However, given the fact that Troast has shown that it was entirely blameless (and the Fund failed to challenge that showing in any manner) it has more than satisfied the willfulness standard -- which is all it needs to do.

Strikingly, the Fund completely ignores the cases cited by Troast, including *United States v. Moradi*, 673 F.2d 725, 727-28 (4th Cir. 1982) and *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811-12 (4th Cir. 1988), which stand for the proposition that a default judgment can be reversed where the defendant was not at fault and where the failure to

file an answer was primarily due to its attorney's carelessness. Instead, the Fund relies entirely on an inapposite Eleventh Circuit case, *Solorall Shade and Shutter Corp .v. Bio-Energy Systems, Inc.*, 803 F.2d 1130 (11th Cir. 1986) which is easily distinguishable from in this case.

First, unlike here, there was no evidence in *Solorall* that the corporate defendant itself, apart from its counsel, was diligent with respect to the action. *Id.* At 1133 ("Bio-Energy has demonstrated neither gross misconduct by its counsel *nor its own diligence* . . . .") (emphasis added). In contrast to the defendant in *Solorall*, Troast did everything in its power in this case to ensure that an Answer would be timely filed -- one was filed prior to the default being entered -- and hired multiple counsel to make sure that procedures were being properly followed. Nevertheless, its former counsel's neglect and mistakes ultimately led to a default judgment. Second, in *Solorall* the Eleventh Circuit relied heavily on a lack of a meritorious defense and used a more stringent standard from that used in this District in assessing the defense. The Eleventh Circuit required Defendants to make an affirmative showing of a defense that is likely to be successful. *Id.* The D.C. Circuit has held, however, "even a hint of a suggestion" of a defense is enough to meet the standard and has specifically concluded that "[l]ikelihood of success is not the measure." *See Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980). Therefore, the Fund's reliance on *Solorall* is entirely misplaced and should not be applied in these circumstances.

## II. Troast Has Presented a Meritorious Defense

The Fund spends 18 of its 22 page opposition outlining its contention that Troast has not presented a meritorious defense. The Fund cites provisions of the Agreement and Trust Agreement, then ignores certain salient facts and cherry-picks and cites other facts that it finds favorable in an effort to convince the Court that Troast has not presented a meritorious defense.

To the contrary, there are significant issues in dispute regarding whether Troast is liable for the claims set forth in the Complaint, and Troast should have an opportunity to fully present its defenses on the merits.

As noted above, the standard for determining whether a meritorious defense has been raised is quite lenient. As the D.C. Circuit held in *Keegle*, the defendant need not actually prove its defenses or in any way show that the defenses have a likelihood of success, but need only allege (even in a broad and conclusory manner) defenses that would act to bar the claims at issue. 627 F.2d at 374. Similarly, in *Jackson v. Beech*, 636 F.2d 831 (D.C. Cir. 1980), which involved claims of mismanaging funds raised against the partners in a private club, the court concluded that this standard could be met by "alleging a meritorious defense." *Id.* at 832-33, 837. Moreover, the defendants in *Jackson* raised the allegation by merely making broad and general statements in an affidavit that the plaintiff himself had been responsible for the missing money at issue and that the plaintiff had brought the action in retaliation for terminating him from his employment. *Id.* at 837; *see also Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 10 n. 5 (D.D.C. 2005) (standard met where there was a mere "potential of a meritorious defense."). In this manner, the Fund's contention that Troast has been "unable to produce evidence in support of its position," Response at 18, elevates the requirement for presenting a meritorious defense beyond that established by D.C. Circuit and thus must be rejected.

Most importantly, there are serious issues as to whether the individuals at the core of the dispute were subject to the Agreement, i.e., whether they were doing work that fell within the jurisdiction of the union as defined by the collective bargaining agreement ("CBA"). If not, then

Troast correctly did not make contributions to the plan on their behalf and has no liability under ERISA or under the contribution claim brought against it here. For example, Douglas Troast, Troast's Chief Executive Officer, stated in his Certification attached to the Motion to Vacate that the individuals in question were not members of the union and were not eligible to become members. Certification of Douglas Troast at ¶ 4, attached to Motion to Vacate at Tab 2. His statement was correct. The Agreement states that the Union is the "collective bargaining agent for all employees doing *work covered in the work jurisdiction defined in 2.2.*" Agreement, attached to the Response, Exhibit 2, 1.1 (emphasis added). Only those employees who were doing work defined in the CBA were either union members or were eligible for union membership. Under the CBA and the Trust Agreement, Troast was obligated to make contributions only for those employees doing such work. Therefore, under the standards applied by the D.C. Circuit with respect to motions to vacate a default judgment, Troast need only *allege* that the individual employees at issue were not engaged in work covered by the CBA in order to meet the meritorious defense standard – as it did in the Douglas Troast certification.

The same allegation was in the August 9, 2005 letter sent from Mr. Troast to the Fund which was attached as Exhibit 4 to the Response. In that letter, Mr. Troast plainly states that the individual employee "is not a member of the union and is not covered by any agreement. [He] functions as a maintenance man for our main office." *Id.* Section 2.2 of the CBA, which lists the work areas covered, does not list general maintenance functions, but only functions related to painting activities. Therefore, allegations have been raised by Troast that show there is a real dispute over whether personnel such as the ones at issue in this case are subject to the terms of the CBA. These allegations should be addressed on the merits. Moreover, it is worth noting that the Fund does not accuse Troast of failing to pay money into the plan altogether. In fact, Exhibit

6 of the Opposition shows that Troast paid over $48,000 into the plan, and Exhibit 4 shows that Troast admitted that it owed past dues (at that time) for certain members; however, Troast should not have to pay monies into the plan that it does not owe for people who are not covered under the CBA and has met the standard for raising a meritorious defense in these circumstances.

The Fund also raises issues in the Response concerning Troast's alleged failure to pay monies into the plan for certain subcontractors. The Fund cites the provision of the Agreement that requires that subcontractors to be signators to the Agreement, and then asserts that Troast has used non-subcontractors. Response at 6. Mr. Troast noted in the August 9, 2005 letter, however, "any reference to subcontractors" and the Fund's desire to collect funds from Troast for their work is "totally unacceptable." Response, Exhibit 5. Therefore, there is a question as to whether any of the work referred to was performed by "subcontractors" and, once again, this is a matter that deserves to be addressed on the merits. In addition, it should also be noted that while the Fund has cited to provisions of the CBA which prohibits the use of non-signatory subcontractors, it has not cited to any provision of that agreement or the Trust Agreement that requires Troast to make contributions to the Fund if such subcontractors are used.

In addition to the allegations with respect to the defenses on the merits contained in Troast's Motion to Vacate and in the materials attached to the Response, such allegations were also raised in the Verified Answer attached to the Motion. First, Troast specifically denied in the Verified Answer that it had failed to make payments due under the CBA. *See* Verified Complaint at ¶ 15; Complaint at ¶ 15. As noted above, if true, this denial would act to bar completely any liability Troast would have under either the ERISA claim or the common law contribution claims under the CBA and Trust Agreement -- something that the Fund failed to address entirely in its Response. Second, Troast raises a number of affirmative defenses each of

which would act as an affirmative defense to the claims brought against it here. Again, the Fund does not deny that this is the case. Instead, it spends a good deal of time and space in the Response attempting to undermine the affirmative defenses raised by Troast in the Verified Complaint in order to show that they will not succeed. In doing so, it is really barking up the wrong tree.

As noted above, likelihood of success is not the standard applied by the D.C. Circuit in these kinds of cases. In fact, neither of the two leading cases establishing the standards for determining motions to vacate default judgments -- *Keegel* or *Jackson* -- did anything other than to confirm that the defendant in those cases had raised defenses or specifically denied the allegations raised in the complaint and nothing more. *See Keegel*, 672 F.2d at 374 (meritorious defense standard met by defendants' allegation that the district court lacked subject matter jurisdiction and their specific denial that they had engaged in any misrepresentations, fraudulent acts, or securities law violations); *Jackson*, 636 F.2d at 837 (standard met by defendants' affidavit which alleged that plaintiff had been responsible for the loss of money by the business at issue). No analysis was done with respect to whether these defenses or denials would succeed—because that is not the standard.

However, even if this Court did go through the analysis, it would find that the meritorious defense standard was met here. It should first be noted that even if Troast could show that *one* of its defenses or denials is a complete defense, that would be enough to meet a standard for the meritorious defense prong that was dependent on the likelihood of success. Given that, Troast will not go through each affirmative defense it has raised in its Verified Answer, but merely highlight a few to make the point.

For example, Troast's Fourteenth Affirmative Defense is that the Fund has no contractual right to payment under the CBA. The Fund's only response is to contend that the CBA requires Troast to make contributions "on behalf of all employees." Response at 18. That assertion, of course, is not accurate at all. As noted above, the CBA only requires contributions to be made for employees carrying out functions within the jurisdiction of the union. Therefore, to the extent that the Fund is trying to collect payments on behalf of employees who do not come within the scope of the agreement, the affirmative defense acts as a complete bar both to the ERISA and contribution claims. The same can be said of Troast's thirteenth affirmative defense, based on the breach of the implied covenant of good faith and fair dealing. However, the Fund actually failed to raise any legal argument at all with respect to whether this affirmative defense applied and merely described it. *Id.* at 17.

Finally, Troast has also raised an affirmative defense based on the allegation that the action is barred by mandatory arbitration and/or mediation provisions in the CBA. Verified Answer at ¶ 15. The Fund does not contest that this affirmative defense would act as a bar to this Court's ability to hear this case – which should end the matter. Instead, the Fund contends that under the Supreme Court's holding in *Schneider Moving & Storage v. Robbins*, 466 U.S. 364 (1984), employee benefit plans are "not required to submit delinquency disputes through a grievance/arbitration provisions in a [CBA]." However, neither *Schneider* nor the cases interpreting it have expressed the issue of arbitrability in such black and white terms. In fact, in cases where the trustees of a union pension fund were themselves parties to the CBA, arbitration clauses have been enforced. *See, e.g., Communications Workers of America v. Michigan Bell Tel. Co.*, 820 F.2d 185, 192 (6th Cir. 1987); *Anderson v. Alpha Portland Indus.*, 752 F.2d 1293, 1296 (8th Cir.), *cert. denied*, 471 U.S. 1102 (1985) (distinguishing *Schneider* and holding that an

8

employer could not refuse to comply with an arbitration clause with respect to its contractual obligations with the union).

Because Troast has specifically denied the key factual allegations in this action and has raised affirmative defenses that would, if proven, be dispositive of the entire matter, it has met the standard for raising a meritorious defense.

### III.  The Fund Will Not Suffer Any Prejudice

With respect to prejudice, the Fund never identifies any particular prejudice that would result from vacating the default judgment. Instead, it merely discusses a hypothetical: "The likelihood of successful recovery diminishes rapidly with the passage of time as assets disappear." Response at 20. The Fund does not even begin to establish that it will be prejudiced by any delay in the proceedings. Certainly, there is no showing that "assets have disappeared" or that the Fund has in any other way suffered or will suffer any prejudice. Indeed, if the possibility of assets disappearing was enough to establish prejudice, then every Plaintiff seeking funds following a default judgment would meet the test. Clearly, more is required. Moreover, the case law specifically rejects the contention that a delay in the recovery of damages is the kind of prejudice that warrants the imposition of a default judgment. *Keegle*, 627 F.2d at 327 (a "delay in the satisfaction of plaintiffs' claim, should plaintiffs succeed at trial, is insufficient" to meet the prejudice standard).

## CONCLUSION

For the reasons stated above, Troast's Motion to Vacate Default Judgment should be granted.

Respectfully submitted,

/s/ Jeffrey L. Karlin
Eric L. Yaffe (DC Bar No. 439750)
  Eric.Yaffe@gpmlaw.com
Jeffrey L. Karlin (DC Bar No. 458465)
  Jeffrey.Karlin@gpmlaw.com
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W.,
Suite 1111
Washington, D.C. 20037
Telephone:   (612) 632-3000
Facsimile:   (202) 625-3311

Date: December 29, 2005            Attorneys for Defendant The Troast Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2005, a copy of the foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO VACATE DEFAULT JUDGMENT** was sent by facsimile and first-class mail, postage prepaid, to the following:

Sanford G. Rosenthal, Esq.
  srosenthal@jslex.com
JENNINGS SIGMOND
510 Walnut Street
Philadelphia, PA 19108
Telephone:   (215) 351-0611
Facsimile:   (215) 922-3524
Attorneys for Plaintiff International Painters and Allied Trades Industry Pension Fund

/s/ Jeffrey L. Karlin