**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 05-1662 (ESH) |
| v. | ) ) | |
| THE TROAST GROUP, INC. | ) ) | |
| Defendant. | ) | |

**JOINT STATEMENT AND PROPOSED SCHEDULING
ORDER PURSUANT TO LOCAL RULE 16.3(d)**

Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Pension Fund," "Fund," or "Plaintiff"), and Defendant, The Troast Group, Inc. ("Company" or "Defendant), hereby jointly submit this Statement in connection with the Scheduling Conference scheduled for February 22, 2006 at 3:15 p.m. The parties have conferred about matters pertaining to this case prior to the submission of this joint statement.

I.     <u>Brief Statements of the Case</u>: The parties hereby submit their respective brief statements of the case:

(a)     <u>Plaintiff's Statement of the Case</u>: The Pension Fund alleges that Company agreed to abide by: (i) the terms and conditions of a collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades District Council 711 ("DC 711" or "Union"), which includes within its jurisdiction the activities of International Union of Painters and Allied Trades Local Union 1976 ("Local 1976"); and (ii) the terms of the agreement and declaration of trust of the Pension Fund ("Trust Agreement") made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful

labor relations. Under the terms of the Labor Contracts, Trust Agreement, rules and regulations as set forth in the International Painters and Allied Trades Industry Pension Plan ("Plan") and pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Company is required (i) to make monthly fringe benefit contribution payments to Pension Fund for all employees covering bargaining unit work, (ii) to file remittance reports with the Pension Fund on a monthly basis and (iii) to submit to a contribution compliance audit.

On June 2, 2005, Company submitted to a contribution compliance audit for the period January 1, 2001 through March 31, 2005, which revealed a delinquency in the amount of $32,007.99. In addition to the delinquency based on unreported hours worked by certain individuals performing bargaining unit work[1], the audit also revealed that a portion of the delinquency resulted from Company's use of a non-signatory subcontractor.[2]

Since April 1, 2005, Company has accrued additional delinquencies based on reports prepared by Company and submitted to the Pension Fund. Based on information currently available to the Pension Fund, Company owes the Pension Fund $72,986.23, consisting of audit shortages in the amount of $32,007.99, a post-audit delinquency (2/04; 5/04 through 4/05; 9/05) in the amount of $9,272.09, interest in the amount of $4,642.91(through 2/15/06), liquidated damages in the amount of $8,256.00, late fees in the amount of $213.12, audit costs in the amount of $1,674.43 and attorneys' fees and costs in the amount of $18,303.43 (through 1/27/06).

---

[1] Specifically, the audit indicated that the Company had underreported hours for G. Mera, L. Muhammad and L. Melborne during the audit period. Mary Rosenberger, Company's bookkeeper, classified these employees as Painters for the purposes of the audit.

[2] The audit indicates that Company subcontracted work to 1st Call Ptg., LLC, a non-signatory contractor. The Agreement forbids subcontracting except to signatory contractors whose employees receive comparable wages, hours or work and working conditions.

(b)      Defendant's Statement of the Case.

While Defendant Troast Group does not contest the fact that it had an obligation under

the collective bargaining agreement (CBA) to make payments into the Pension Fund, the

individuals at issue here were doing work that fell outside the scope of the jurisdiction of the

union as defined by agreement.  The CBA states that the Union is the "collective bargaining agent

for all employees doing *work covered in the work jurisdiction defined in 2.2*."  CBA at ¶ 1.1

(emphasis added).  Under the CBA and the Trust Agreement, Troast was obligated to make

contributions only for those employees doing such work.  Since the employees at issue here

function as maintenance personnel, whose tasks were not included in the work areas covered by

the CBA, Troast did not breach the CBA by not making contributions for those individuals.  In

addition, it remains an open question as to whether Troast had an obligation to make

contributions with respect to the subcontractors at issue here.

II.      Matters Governed by Local Rule 16.3(c):

The parties further stipulate and agree to the following matters pursuant to Local Rule

16.3(c) as amended and Rule 26 of the Federal Rules of Civil Procedure:

1.      The case, in whole or in part, may be disposed of by dispositive motion, and the

parties reserve their respective rights to file such a motion.

2.      The parties agree that any remaining non-parties should be joined and all pleadings

be amended by no later than May 1, 2006. The parties believe the legal and factual issues will be

narrowed by the close of discovery.

3.      The parties agree that this case may be assigned to a magistrate judge for

discovery purposes only.  This case should not be assigned to a magistrate judge for trial.

164263-1                                     3

4.      The parties have discussed settlement and believe it to be a viable and very realistic option.

5.      Plaintiff's counsel does not believe that this matter would benefit from alternative dispute resolution.  Defendant, Troast Group, believes that the case should be referred without delay to mediation pursuant to the United States District Court's Mediation Program.  The amount of damages at issue in this case is relatively small and does not warrant either party spending further money on attorney's fees and related litigation costs.  The parties are currently engaged in informal settlement discussions and these efforts will be enhanced and judicial resources saved if the case proceeds through an alternative dispute process before the onset of discovery.

6.      The parties are reasonably certain that this matter can eventually be resolved in part or in whole by summary judgment.  The parties submit that summary judgment motions should be due 30 days after conclusion of discovery with oppositions submitted in accordance with Local Civil Rule 7.  The decision date on these dispositive motions should be within 30 days of the reply deadline date.

7.      The parties agree to dispense with the initial disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure.

8.      The parties ask that all discovery be completed by June 30, 2006, with the following limits on discovery:

(a)      Interrogatories. Maximum of twenty-five (25) interrogatories, including parts and subparts, by Plaintiff to Defendants and vice-versa, without leave of court. Responses due in accordance with Fed. R. Civ. P. 33.

164263-1

(b)    <u>Document Production</u>. No maximum for requests for production of documents by each party to any other party. Responses due in accordance with Fed. R. Civ. P. 34.

(c)    <u>Requests of Admission</u>.  Maximum of twenty-five (25) requests for admission by Plaintiff to Defendants and vice-versa.  Responses due in accordance with Fed. R. Civ. P. 36.

(d)    <u>Depositions</u>.  Maximum of ten (10) depositions by Plaintiff and ten (10) by Defendants.  However, neither Plaintiff nor Defendants may exceed five (5) non-party, non-expert witness depositions without leave of Court.  Each deposition is limited to a maximum of seven (7) hours (excluding a one (1) hour lunch break) unless extended by agreement of the parties or otherwise permitted by this Court.

9.    The normal requirements for exchange of expert witness reports and information should prevail, with all depositions of experts to be completed within the discovery period.

10.    As this is not a class action, all provisions regarding class action lawsuits are inapplicable.

11.    There is no need for special bifurcation of trial or discovery.

12.    The pre-trial conference should be scheduled for a date approximately 30 days after any decision on dispositive motions; or, if there are no dispositive motions, the pre-trial conference should be scheduled for a date approximately forty-five (45) days after the close of discovery.

13.     The Court should set a trial date at the pre-trial conference, with such date to be within 30 to 60 days after the pre-trial conference.

Respectfully submitted,

By: /s/Sanford G. Rosenthal

Sanford G. Rosenthal (D.C. Bar No. 47873)
JENNINGS SIGMOND, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106
Telephone:  (215) 351-0674

Attorney for Plaintiff

By: /s/Jeffrey L. Karlin

Eric L. Yaffe (D.C. Bar No. 439750)
Jeffrey L. Karlin (D.C. Bar No. 458465)
GRAY PLANT MOOTY
2600 Virginia Avenue, N.W.
Suite 1111
Washington, D.C. 20037
(202) 295-2207

Attorneys For Defendant

Dated:_____

OF COUNSEL:

SHANNA M. CRAMER
JENNINGS SIGMOND, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106
Telephone:  (215) 351-0674

164263-1

6