# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. i

I.   STATEMENT OF FACTS ........................................................................................ 1

II.  ARGUMENT ............................................................................................................. 4

      A.   ENTRY OF SUMMARY JUDGMENT AGAINST COMPANY FOR UNPAID CONTRIBUTIONS, LIQUIDATED DAMAGES, INTEREST, LATE FEES, ATTORNEYS' FEES AND COSTS AND AUDIT COSTS IS ENTIRELY APPROPRIATE................................................................................................... 6

            1.   Contributions ................................................................................. 7

            2.   Liquidated Damages ..................................................................... 10

            3.   Interest............................................................................................ 12

            4.   Late Fees ....................................................................................... 12

            5.   Attorneys' Fees and Costs............................................................. 13

            6.   Audit Costs ................................................................................... 14

      B.   THE PLAINTIFF, AS THE MOVING PARTY IN THIS MOTION FOR SUMMARY JUDGMENT, HAS MET ITS BURDEN OF PROOF BY DEMONSTRATING THE ABSENCE OF ANY MATERIAL FACT CONCERNING THE CONTRIBUTIONS, LIQUIDATED DAMAGES, INTEREST, ATTORNEYS' FEES AND COSTS AND LATE FEES OWED BY COMPANY TO THE PLAINTIFF................................................................... 15

III. CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................. 5, 6, 9

Barnstead Broadcasting Corporation v. Offshore Broadcasting Corporation, 886 F.Supp. 874, 878 (D.D.C.1995) ............................................................................................................ 4

Bennett v. Machined Metals Co., 591 F.Supp. 600 (E.D. Pa. 1984) ................................. 11

\* Carpenters Health and Welfare Fund of Philadelphia and Vicinity v. Building Tech, 747 F.Supp. 288 (E.D. Pa. 1990) ............................................................................................. 9-12

Carpenters & Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476 (8th Cir. 1988) .... 11

\* Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ................................................................. 4

Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38, aff'd sub nom, (D. Minn. 1980) ............................................................. 8

Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole Dixie Highway Company, Inc., 642 F.2d 1122 (8th Cir. 1981) ........................................................................................... 8

Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559 (1985) .................................................................................................................................. 14

Cortez III v. N.A.S.A., 921 F.Supp. 8, 11 (D.D.C.1996) ................................................. 4-5

Flynn v. Mastro Masonry Contractors, 237 F.Supp.2d 66 (D.D.C. 2002) ........................ 11

Forys v. United Food and Commercial Workers International Union, 829 F.2d 603 (7th Cir. 1987) ................................................................................................................................ 13

\* Free v. Briody, 703 F.2d, 807 (7th Cir. 1986) ................................................................... 13

Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029 (D.C.Cir.1988) ....................................... 4, 5

Harding v. Gray, 9 F.3d 150 (D.C.Cir.1993) ........................................................................ 5

Houghton v. Sipco, Inc., 828 F.Supp. 631 (S.D. Iowa, 1993) ............................................ 13

Idaho Plumbers & Pipefitters v. United Mechanical Contractors, Inc., 875 F.2d 212 (9th Cir. 1989) ............................................................................................................................ 11

International Painters and Allied Trades Industry Pension Fund v. Claser Painting Corporation, 91-7185 slip. op. at *1-2 (D.C. Cir. Feb. 1, 1993).................................13

International Painters and Allied Trades Industry Pension Fund v. R.W. Amrine Drywall Co., Inc., 239 F.Supp.2d 26 (D.D.C. 2002) ................................................................12

Laborers' Dist. Council Pension & Disability Trust No. 3 v. Jones & Artis Constr. Co., Inc., 1992 WL 510260 (D.D.C. 1992) ........................................................................9

Laningham v. U.S. Navy, 813 F.2d 1246 (D.C.Cir.1987) ........................................................5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)..............................4

Peterson v. Lehigh Valley District Council, 676 F.2d 81 (3d Cir. 1982) ...............................4

Radobenko v. Automatic Equipment Corp., 520 F.2d 540 (9th Cir. 1975)............................6

Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Company, 876 F.2d 852 (10th Cir. 1989) .......................................................................................13

Trustees of the Glaziers Local 963 Pension, Welfare and Apprentice Funds v. Walker and Laberge Co.. Inc., 619 F.Supp. 1402. (D.Md. 1985) ...............................................11

United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yaha & McDonnell, Inc., 787 F.2d 128, *aff'd per curiam*, 481 U.S. 735 (3d Cir. 1986).........................................................................................................13

W.M. Ercanbrack Co., Inc. v. Sol Salins, Inc., 844 F.Supp. 817 (D.D.C. 1994) ..................5

* Trustees of Painters Union Deposit Fund v. Ybarra Construction Co., 2004 WL 2334145 (6th Cir. 2004).........................................................................................................8, 9

**FEDERAL STATUTES AND RULES**

  26 U.S.C. §6621............................................................................................................12

* 29 U.S.C. §§1132(a)(2)...............................................................................................12

* 29 U.S.C. §§1132(g)(2) ...........................................................................................7, 11

* 29 U.S.C. §1145............................................................................................................7

* Fed. R. Civ. P. 56..........................................................................................................4

  29 C.F.R. §2530-200b-2(a)(1) and (2) ..........................................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED<br>TRADES INDUSTRY PENSION FUND<br><br>                Plaintiff,<br>v.<br><br>THE TROAST GROUP, INC.<br><br>                Defendant. | )<br>)<br>)<br>) CIVIL ACTION NO. 05-1662 (ESH)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Pension Fund," "Fund" or "Plaintiff"), by its legal counsel, files this Memorandum in Support of its Motion for Summary Judgment Against Defendant, The Troast Group, Inc. ("Company" or "Defendant"). The facts set forth in Plaintiff's Complaint, the attached Motion, Declarations and Exhibits are hereby incorporated by reference.

**I.    STATEMENT OF FACTS**

On July 26, 2001, the Company executed a collective bargaining agreement ("Labor Agreement") with the International Union of Painters and Allied Trades District Council 711 ("DC 711"), which includes in its jurisdiction the activities of the International Union of Painters and Allied Trades Local 1976 ("Local 1976" and together with DC 711, "Union") covering the period May 1, 2000 through April 30, 2006. *See,* Montemore Decl., ¶3; Exhibit 2; Complaint, ¶6. The Labor Agreement also binds the Company to the Fund's Trust Agreement ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") adopted by the Fund's Trustees. *See,* Exhibit 2, Article 10; Exhibit 3, Article VI; Exhibit 4, Article 10, §10.07). The Labor Agreement provides for the payment of contributions to the Fund

173386-1

for time worked by or paid to employees who perform work covered by the terms and conditions of the Labor Agreement. *See,* Exhibit 2, Article 10; Exhibit 3, Article VI. These contributions must be received by the Fund no later than the fifteenth (15th) day of the month following the month in which the work was performed. *See,* Exhibit 2, Article 8, §8.5. Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Fund. *See,* Montemore Decl., ¶4.

On June 2, 2005, the Pension Fund conducted an audit on Defendant's books and records for the period January 1, 2001 through March 31, 2005. *See,* Montemore Decl., ¶5; Moore Decl., Moore Decl., ¶3. The audit revealed a discrepancy between remittance reports submitted by the Company and payroll records maintained by the Company in the amount of $32,007.99. *See,* Moore Decl., ¶3; Exhibit 8.

Prior to the commencement of this action, the Fund attempted to resolve this delinquency in an amicable manner. *See,* Montemore Decl., ¶7. In a letter dated July 21, 2005, Gary Meyers, the Fund Administrator, informed Company of the audit findings, and set a deadline of August 1, 2005 for Company to pay the outstanding contributions, interest, liquidated damages, late fees, audit fees and attorneys' fees and costs in the amount of $54,608.63. *See,* Montemore Decl., ¶7; Exhibit 5. Mr. Meyers also gave Company the option to rebut the audit, which required payment in the amount of fifty percent (50%) of the Total, as well as documentation to support the rebuttal. *See,* Montemore Decl., ¶7; Exhibit 5.

In a letter dated August 9, 2005, Company contested the audit results. *See,* Montemore Decl., ¶8; Exhibit 6. Nevertheless, Company failed to include both the required payment and documentation supporting its rebuttal. *See,* Montemore Decl., ¶8; Exhibit 6. As a result of

Company's failure to comply with the Labor Agreement, Trust Agreement and Plan, Plaintiff filed this lawsuit on August 19, 2005.

Company failed to file a valid Answer in this matter and on October 25, 2005, the Clerk entered default against Company[1]. *See,* Docket Entry 6. On November 10, 2005, Plaintiff filed its Motion for Entry of Judgment by Default. *See,* Docket Entry 9. On November 21, 2005, Judge Ellen S. Huvelle entered Judgment against Defendant and in favor of Plaintiff. *See,* Docket Entry 10.

Shortly after the Order on Motion for Default Judgment was entered in favor of Plaintiff, Company retained new counsel. On December 9, 2005, Defendant filed a Motion to Reopen Case and a Motion to Vacate Default Judgment, which included Defendant's Verified Answer. *See,* Docket Entries 14, 15. On December 22, 2005, Plaintiff filed its Response in Opposition to Defendant's Motion to Reopen Case and Motion to Vacate Default Judgment. *See,* Docket Entry 16. On February 1, 2006, Judge Huvelle granted Defendant's Motion to Reopen Case and Motion to Vacate Default Judgment. *See,* Docket Entry 18.

As of the date of the filing of this Motion, Company still has not paid the audit deficiency or submitted sufficient documentation to rebut the audit findings. *See,* Montemore Decl., ¶9. Therefore, based on: (a) the audit report; (b) shortages which were discovered after the completion of the audit; and (c) estimates calculated for the period January 2006 through September 2006 as a result of Company's failure to submit reports, Company owes the Pension Fund contributions in the amount of $43,449.84. *See,* Montemore Decl., ¶10.

---

[1] On October 17, 2005, Defendant filed its Answer. On October 21, 2005, the Court deleted Defendant's Answer because Paul R. DeFilippo, Esquire, the attorney who filed the Answer on behalf of Defendant, was not a member in good standing with the United States District Court for the District of Columbia. *See,* Docket, Notice of Corrected Docket Entry.

173386-1                                   3

The Court has already granted Judgment in Plaintiff's favor once in this case. Since the entry of Judgment against Defendant on November 21, 2005, Plaintiff's damages have only increased. As there exists no genuine issue as to any material fact, Plaintiff is entitled to summary judgment against the Company and an Order rendering the Company liable for all amounts owed to the Plaintiff.

II. **ARGUMENT**

Rule 56 of the Federal Rules of Civil Procedure provides:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Summary judgment is a "useful procedure when there is no dispute about the critical facts and it serves to eliminate the expense and delay of unnecessary trials." *Peterson v. Lehigh Valley District Council*, 676 F.2d 81, 83 (3d Cir. 1982). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1355-56 (1986); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1032 (D.C.Cir.1988); *Barnstead Broadcasting Corporation v. Offshore Broadcasting Corporation*, 886 F.Supp. 874, 878 (D.D.C.1995). As summarized in *Cortez III v. N.A.S.A.*, 921 F.Supp. 8, 11 (D.D.C.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986)), the moving party is entitled to summary judgment where "the non-moving party has

failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

On a motion for summary judgment, the Court accepts the truth of factual assertions contained in affidavits and other evidence in support of the motion for summary judgment, unless the facts are controverted by the non-moving party through affidavits or other documentary evidence. *Cortez III, supra*, 921 F.Supp. at 11. The adverse party's response to the movant's summary judgment motion must set forth specific facts showing that there is a genuine issue for trial. *Ibid.* Under *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993), the non-moving party can only defeat a motion for summary judgment by responding with a factual showing to create a genuine issue of material fact.

A "genuine issue" of material fact exists if the disputed facts "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). In order to show a genuine issue of material fact which will preclude summary judgment, the non-movant "must not only identify the alleged *facts* at issue, but must support its findings with evidence based upon appropriate references to the record before the District Court." *W.M. Ercanbrack Co., Inc. v. Sol Salins, Inc.*, 844 F.Supp. 817, 819 (D.D.C.1994) (emphasis added) (citing *Frito-Lay, Inc., supra* 863 F.2d at 1034. Evidence which is "merely colorable" or "not significantly probative," will not prevent summary judgment, *Liberty Lobby, supra*, 477 U.S. at 249-250, 106 S.Ct. at 2510-2511. The non-movant meets its burden of showing that a dispute of fact is material only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Laningham v. U.S. Navy*, 813 F.2d 1246, 1242 (D.C.Cir.1987). A purported dispute of fact based on internal contradictions in the

testimony or evidence presented by the non-movant is not "genuine" so as to foreclose summary judgment. *Radobenko v. Automatic Equipment Corp.,* 520 F.2d, 540, 544 (9th Cir.1975). Whether a genuine issue as to any material fact exists is determined by whether the evidence is such that the fact finder reasonably could find in favor of the nonmoving party. *Liberty Lobby,* 477 U.S. 242, 248 (1986).

As demonstrated below, there are no factual disputes and the Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court should dispose of this action by summary judgment.

> **A.    ENTRY OF SUMMARY JUDGMENT AGAINST COMPANY FOR UNPAID CONTRIBUTIONS, LIQUIDATED DAMAGES, INTEREST, LATE FEES, ATTORNEYS' FEES AND COSTS AND AUDIT COSTS IS ENTIRELY APPROPRIATE**

At all times relevant to this action, the Company was bound to a collective bargaining agreement ("Labor Agreement") with the Union. *See* Montemore Decl., ¶3; Exhibit 2; Complaint, ¶6. The Labor Agreement further binds the Company to the terms and conditions of the Trust and Plan. *See,* Montemore Decl., ¶3; Exhibit 2, Article 10; Exhibit 3, Article VI; Exhibit 4, Article 10, §10.07. Pursuant to the Labor Agreement, Trust and Plan, the Company is required to submit remittance reports and pay contributions to the Fund for time worked by or paid to its covered employees. *See,* Montemore Decl., ¶4; Exhibit 2, Article 10; Exhibit 3, Article VI; Exhibit 4, Article 10, §10.07. The Labor Agreement sets forth the rate of contribution and the method for calculating the total amount of contributions due to the Fund and time period within which these contributions are to be paid to the Fund. *See,* Montemore Decl., ¶4; Exhibit 2, Article 6, §6.4. Finally, the Plan and Regulations provide for liquidated damages if an employer

does not submit its remittance reports and contributions by the contractually prescribed due date. *See,* Exhibit 4, Article 10, §10.12 (b)(3).

Section 515 of the Employee Retirement Income Security Act, 29 U.S.C. §1145 provides:

> "Every Employer who is obligated to make contributions to a multiemployer plan... under the terms of a collectively bargained agreement shall...make such contributions in accordance with...such agreement."

If an employer fails to make the contributions as required by the collective bargaining agreement and Section 515, then the employer is subject to the provisions of Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2). Section 502(g)(2) provides for the <u>mandatory</u> award of the following if a judgment under Section 515 is entered in the Fund's favor:

    (A)    the unpaid contributions,

    (B)    interest on the unpaid contributions,

    (C)    an amount equal to the greater of:

        (i)    interest on the unpaid contributions; or

        (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (a),

    (D)    reasonable attorneys' fees and costs of the action, to be paid by the defendant, and

    (E)    such other legal or <u>equitable</u> relief as the court deems appropriate.

29 U.S.C. § 1132 (g) (2) (A)-(E) (emphasis added).

    **1.**    **Contributions**

The failure of the Company to comply with its contractual and statutory obligations

results in a substantial adverse impact on the Fund's ability to meet its legal obligations. The Fund is obligated by express mandates of the Employee Retirement Income Security Act of 1974 and by the documents and instruments by which it is administered to provide benefits and eligibility credits to the Company's employees who are otherwise eligible to receive them. 29 C.F.R. §2530-200b-2(a)(1) and (2); *see also Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.*, 511 F.Supp. 38 (D.Minn. 1980), *aff'd sub nom, Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Company, Inc.*, 642 F.2d 1122 (8th Cir. 1981). The Fund is required to provide these benefits and credits regardless of whether the Company makes the contributions. When an employer fails to submit fringe benefit contributions for the work performed by its employees, the result is a significant drain on the resources of the Pension Fund.

Courts have held that in cases where no contradictory evidence is produced, the results of an audit should be presumed accurate. *Trustees of the Painters Union Deposit Fund v. Ybarra Construction Co.*, 2004 WL 2334145 *668 (6th Cir. 2004). In the case at bar, the Fund conducted an audit on Defendant's books and records for the period January 1, 2001 through March 31, 2005 which revealed a delinquency of $32,007.99. *See,* Moore Decl., ¶3; Exhibit 8. The payroll records reviewed for the audit were furnished by department and the Company itself classified which employees were painters performing covered work. *See,* Moore Decl., ¶4. The audit revealed a deficiency for G. Mera, an employee classified by Company's bookkeeper as a non-union painter.[2] *See,* Moore Decl., ¶5. The records provided by Company also revealed payments made to non-union subcontractors.[3] *See,* Moore Decl., ¶6. Although Company disputed the

---

[2] Contributions must be paid on behalf any employee performing covered work. *See,* Exhibit 2, Article 2, §2.2(A).
[3] The Labor Agreement specifically forbids subcontracting "except to signatory contractors whose employees

173386-1
8

audit findings in its August 9, 2005 letter, Company failed to provide additional records to substantiate its arguments that the delinquent contributions were improperly calculated on the audit report. *See,* Montemore Decl., ¶8; Exhibit 6. This letter alone is insufficient to raise a triable issue of fact because the non-moving party is required to "present affirmative evidence in order to defeat a properly support motion for summary judgment. *Ybarra*, 2004 WL 2334145 *668 citing *Liberty Lobby*, 477 U.S. 242, 248 (1986).

In addition to the audit amounts, Company owes the Fund $8,546.82 in shortages which were discovered after the completion of the audit and therefore not included in the audit report. Finally, Company has failed to submit remittance reports for the period January 2006 through September 2006, resulting in an estimated delinquency of $2,895.03.[4] Accordingly, this Court should not only enter judgment in Plaintiff's favor but order the Company to pay the contributions in the amount of $43,449.84.

In addition to the remedies set forth in ERISA, the Fund is entitled to an award based upon the contractual remedies set forth in the Labor Agreement, the Trust and the Plan. *Laborers' Dist. Council Pension & Disability Trust No. 3 v. Jones & Artis Constr. Co. Inc.*, 1992 WL 510260, *1 (D.D.C. 1992); *Carpenters Health and Welfare Fund of Philadelphia and Vicinity v. Building Tech*, 747 F.Supp. 288, 297 (E.D. Pa. 1990). The Labor Agreement, Trust and Plan require signatory employers to submit timely contributions on a monthly basis together with properly completed remittance reports. *See,* Montemore Decl., ¶4; Exhibit 2, Article 8, §8.5;

---

receive comparable wages, hours or work and working conditions." *See,* Exhibit 2, Article 15, § 15.1.
[4] Estimate based on the average of <u>the last three consecutively filed</u> reports as follows:
    10/05 $370.56
    11/05 $594.44 (2 reports $308.80 & $285.64)
    12/05 <u>$00.00</u>   Report reflected no hours worked this month
        $965.00 divided by 3 = $321.67 x 9 months = $2,895.03

173386-1                                          9

Exhibit 2, Article 10; Exhibit 3, Article VI); Exhibit 4, Article 10, §10.12(b). When these employers fail to submit contributions, the Fund may pursue claims for these amounts plus related costs, damages and interest.

### 2. Liquidated Damages

When an employer fails to remit its contributions, the Fund loses the income that it could have earned by investing these contributions. *See* Montemore Decl., ¶15. Combining this loss of investment income with the requirement to continue to pay benefits will eventually affect the actuarial soundness of the Fund as well as deplete resources available to pay current and future retirement benefits. *Ibid.* Furthermore, the Fund incurs additional administrative expenses as a result of an employer's failure to pay its contributions. *Ibid.* These added costs include the substantial time and expense involved in administrative efforts to collect the delinquent contributions and in having to manually process participant eligibility for benefits. *Ibid.* These losses and added costs are not capable of precise determination. *Ibid.* The liquidated damages provided in the Labor Agreement, Trust and Plan are, in part, to compensate the Fund for the losses and added costs resulting from employer contribution delinquencies. The liquidated damages are reasonable and rationally related to the losses and additional costs incurred by the Fund and the Fund is entitled to judgment for them.

In *Building Tech, supra*, the court, in reaching its decision, addressed, at length, the right of plaintiff funds to recover liquidated damages from a delinquent employer for unpaid contributions. Specifically, the court found that because the parties' Labor Agreement sets forth the conditions that would trigger the assessment of liquidated damages for failure to timely pay contributions, the plaintiff funds were entitled to recover liquidated damages from the delinquent

defendant for (1) contributions that were unpaid at the time the complaint was filed, (2) contributions which were paid by the time the complaint was filed, and (3) contributions which arose after the complaint was filed and paid before trial. *Building Tech*, 747 F.Supp. at 296. The court noted:

> [w]e can not believe Congress wanted to make things worse by voiding provisions of master agreements that penalized employers for late payments (footnote omitted). Without such protection, union workers covered by funds such as the plaintiff funds could be routinely deprived of substantial interest through deliberate patterns of late, last minute payments and there would be nothing the funds could do about it.

*Id.* at 297-298.[5]

The court's discussion in *Building Tech* was echoed by this Court in *Flynn v. Mastro Masonry Contractors*, 237 F.Supp.2d 66 (D.D.C. 2002). Launching into its own discussion of the Congressional intent in enacting 29 U.S.C. § 1132(g)(2), the Court stated that:

> Congress intended to preserve the private multi-employer pension plan system by ensuring that employers make the required contributions to the pension plans. The intent of this section is to promote the prompt payment of contributions and *assist plans in recovering the costs incurred in connection with delinquencies.*"

*Flynn,* 237 F.Supp.2d 66 at 69-70 (citations omitted) (emphasis added).

The teachings of the *Building Tech* and *Flynn* line of cases are equally applicable to the matter before this Court. The Company is bound to Labor Agreement, the Trust and the Plan. The Labor Agreement and Plan provide that the Company will be assessed liquidated damages if

---

[5] *See also Idaho Plumbers & Pipefitters v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir.1989) (provisions of 29 U.S.C. § 1132(g)(2) apply at the time suit is filed rather than at the time of judgment); *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir.1988) (same); *Bennett v. Machined Metals Co.*, 591 F.Supp. 600, 605-06 (E.D.Pa.1984) (same); *Trustees of the Glaziers Local 963 Pension, Welfare and Apprentice Funds v. Walker and Laberge Co.. Inc.*, 619 F.Supp. 1402, 1405 (D.Md.1985) (same).

it fails to timely pay its contribution obligations. *See,* Exhibit 4, §10.12(b)(3). Here, Company has consistently failed to pay the contractually required contributions on a timely basis. The Company's routine failure to honor and comply with the terms of the Labor Agreement and the Plan clearly entitles the Fund to an award of liquidated damages. As in *Building Tech*, the Fund must be awarded liquidated damages on (1) the contributions paid in an untimely manner before commencement of this action, (2) the delinquent contributions owed at commencement of this action, and (3) the contributions that became due after suit was filed and that remain unpaid. *Building Tech,* 747 F.Supp. at 298. Accordingly, the Court should order the Company to pay liquidated damages in the amount of $8,689.96, which have been calculated on delinquent contributions in accordance with the Plan and ERISA.

    3.    **Interest**

Interest under ERISA is calculated in accordance with 26 U.S.C. §6621 from the date the contributions became due until the date of actual payment and is a mandatory award under ERISA. *See* 29 U.S.C. §1132 (a)(2); *International Painters and Allied Trades Industry Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d 26, 31 (D.D.C. 2002). The Plan set the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. *See,* Exhibit 4, Article 4, §10.12(b)(2). As the Company has failed to submit all outstanding contributions, the Fund has assessed interest in accordance with ERISA and the Plan in the amount of $5,912.89.

    4.    **Late Fees**

ERISA and the Section 10.12 of the Plan allow other legal or equitable relief as the Court deems appropriate. *See,* Exhibit 4. Article VI, § 4 of the Pension Fund's Agreement and

Declaration of Trust provides for "late charges" in the form of interest on contributions paid more than twenty days after the due date and prior to litigation. *See,* Exhibit 3. The Company owes $213.12 in late charges for the period March 2004 through November 2004. *See,* Montemore Decl., ¶13; *International Brotherhood of Painters and Allied Trades International Union and Industry Pension Fund v. Claser Painting Corporation*, No. 91-7185, slip. op. at *1-2 (D.C. Cir. Feb. 1, 1993).

### 5. Attorneys' Fees and Costs

The award of attorneys' fees and costs also is mandatory, *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yaha & McDonnell, Inc.*, 787 F.2d 128, 134-135 (3d Cir. 1986), *aff'd per curium*, 481 U.S. 735, 107 S. Ct. 2171 (1987) (award of attorneys' fees and costs is mandatory in an action to recover delinquent contributions), and includes reimbursement for computerized legal research as well as traditional costs, *Houghton v. Sipco, Inc.*, 828 F. Supp. 631, 650-651 (S.D. Iowa, 1993). The statute covers not only attorneys' fees and costs to the date of judgment but also any attorneys' fees and costs expended in subsequent efforts to collect and enforce the judgment *Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Company*, 876 F.2d 852, 854 (10th Cir. 1989) (fund entitled to recover fees incurred in garnishment proceedings); *Free v. Briody*, 703 F.2d, 807 (7th Cir. 1986) (ERISA authorizes award of fees in collecting judgment); *Forys v. United Food and Commercial Workers International Union*, 829 F.2d 603, 604-605 n.2 (7th Cir. 1987) (same). This provides the normal commercial remedy to allow the Fund to pursue actual collection beyond the mere entry of judgment without infringing on the assets available for benefits to employees of employers who meet their obligations.

In the instant action, the Fund has incurred attorneys' fees and costs in the amount of

$31,949.57 in litigating this action. Cprek Decl., ¶3; Exhibit 10. Upon entry of judgment, it is highly likely that the Fund will incur additional attorneys' fees and costs in pursuing collection of the judgment. Based on the foregoing well-established rules governing reimbursement of attorneys' fees and costs, the Fund should be entitled to not only reimbursement of attorneys' fees and costs incurred in litigating this matter, but also in collecting and enforcing the judgment.

### 6.     Audit Costs

The determination of an employee's eligibility for benefits is made based upon information contained on a remittance report provided the Fund each month as per the Labor Agreement and Trust. *See,* Montemore Decl., ¶14. When a remittance report is not submitted or contains incorrect information, then a proper determination of eligibility and amounts due to the Fund is impossible. In such a case, the only means of obtaining the necessary information is to review the employer's payroll records. *Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 581 (1985).

Here, the Company failed to submit timely remittance reports and all outstanding fringe benefit contributions. *See,* Montemore Decl., ¶10. This breach of the Labor Agreement, Trust, Plan and ERISA is evidenced in part in the audit report, prepared Fund auditor Robert E. Moore, C.P.A., on June 2, 2005. This audit of the Company's payroll books and related records covered the period January 1, 2001 through March 31, 2005 and revealed a delinquency in the amount of $32,007.99. *See,* Moore Decl. ¶3; Exhibit 8. This audit was the only possible means to accurately help quantify the Company's financial obligations to the Fund. This audit confirmed that the Company failed to submit timely contributions and other related amounts to the Fund. *See,* Exhibit 8.

The Trust and Plan further provide that in the event an audit of the employer's records

determines that contributions are owed to the Fund, then the employer shall be responsible for the cost of the audit. *See,* Exhibit 3, Article VI, §6. In the present case, the audit uncovered a delinquency to the Fund for which the Company is liable. The cost of the audit was $1,674.43. This amount has not been paid by the Company. Therefore, Company should be ordered to pay this amount in addition the other contributions and related amounts set forth in an order for relief.

 **B. THE PLAINTIFF, AS THE MOVING PARTY IN THIS MOTION FOR SUMMARY JUDGMENT, HAS MET ITS BURDEN OF PROOF BY DEMONSTRATING THE ABSENCE OF ANY MATERIAL FACT CONCERNING THE CONTRIBUTIONS, LIQUIDATED DAMAGES, INTEREST, AUDIT COSTS AND ATTORNEYS FEES AND COSTS OWED BY COMPANY TO THE PLAINTIFF.**

Plaintiff has offered sufficient proof in the form of the Declarations of Thomas Montemore, Robert E. Moore and Kent Cprek, Esquire and the accompanying Exhibits to demonstrate that the Company owes contributions, liquidated damages, interest, late fees, audit costs and attorneys' fees and costs to Plaintiff.

As a result of Company's failure to pay its fringe benefit contribution obligations as required by the Labor Agreement, Trust, Plan and ERISA, Company is liable for all of the damages both based on contract and statute. Based on the remittance reports prepared by Company and the audit conducted by Robert E. Moore, Company owes the following amounts to the Fund:

| | | | |
|---|---|---|---:|
| | 1. | Contributions for March 2003 through September 2006: | $43,449.84 |
| | 2. | Interest accrued to October 31, 2006: | 5,912.89 |
| | 3. | Liquidated damages | 8,689.96 |
| | 4. | Late fees: | 213.12 |
| | 5. | Audit Costs: | 1,674.43 |

173386-1

15

|   |   |   |   |
|---|---|---|---|
| 6. | Attorneys' fees and costs: | | 31,949.57 |
| | **TOTAL:** | | **$91,889.81** |

Montemore Decl., ¶¶ 10-14; Exhibit 8; Cprek Decl., ¶ 3; Exhibit 10.

Given the clear language of the contract and obligations mandated by ERISA, this Court should not only enter judgment in the Fund's favor but order Company to pay the contributions, contractual liquidated damages, interest, late fees, audit costs and attorneys' fees and costs which it owes.

### III. CONCLUSION

Based on the foregoing, Plaintiff is entitled to judgment as a matter of law for all amounts outstanding. Plaintiff respectfully request an Order be entered in favor of the Plaintiff and against Company in the amount of $91,889.81.

    Respectfully submitted,

    JENNINGS SIGMOND, P.C

    BY: s/ Kent Cprek
    KENT CPREK
    Bar No. 478231
    SANFORD G. ROSENTHAL
    Bar No. 478737
    The Penn Mutual Towers, 16th Floor
    510 Walnut Street, Independence Square
    Philadelphia, PA 19106-3683
    (215) 351-0615/0674

Dated: October 30, 2006      Attorneys for the Fund

OF COUNSEL:
Shanna M. Cramer
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0674