IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND )<br><br>Plaintiff, )<br>v. )<br>THE TROAST GROUP, INC. )<br>Defendant. ) | )<br>)<br>)<br>)CIVIL ACTION NO. 05-1662 (ESH)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF THOMAS C. MONTEMORE

Thomas C. Montemore states under penalty of perjury that the following is true and correct:

1. My name is Thomas C. Montemore and I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2. The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Brotherhood of Painters and Allied Trades, AFL-CIO-CFL ("Brotherhood"), and employers in private industry whose employees are members of or otherwise represented by the Brotherhood and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

3. The Troast Group, Inc. ("Company" or "Defendant") is a New Jersey corporation



174475-1

and an employer in an industry affecting interstate commerce. Company is currently a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Agreement") with the International Union of Painters and Allied Trades District Council 711 ("DC 711"), which includes in its jurisdiction the activities of the International Union of Painters and Allied Trades Local 1976 ("Local 1976" and together with DC 711, "Union"). True and correct copies of the relevant sections of the Trust Agreement are attached as Exhibit 2. For all times relevant to this action, Company has remained signatory to a collective bargaining agreement with the Union. Under the terms of the collective bargaining agreements, Defendant is bound to the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan"). A true and correct copy of the Pension Fund's Trust Agreement is attached as Exhibit 3. True and correct copies of the relevant provisions of the Plan are attached as Exhibit 4.

4. The collective bargaining agreement requires Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or the submission of incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

5. On June 2, 2005, the Pension Fund conducted an audit on Defendant's books and records for the period January 1, 2001 through March 31, 2005 which revealed a delinquency of $32,007.99.

6. This audit delinquency results primarily from the Company's employment of G.

Mera, a non-union painter and 1st Call Ptg., a non-signatory sub-contractor.

7. In a letter dated July 21, 2005, Gary Meyers, the Fund Administrator, informed Company of the audit findings, and set a deadline of August 1, 2005 for Company to pay the outstanding contributions, interest, liquidated damages, late fees, audit costs and attorneys' fees and costs in the amount of $54,608.63 ("Total") in full. A true and correct copy of the July 21, 2005 letter is attached as Exhibit 5. Mr. Meyers also gave Company the option to rebut the audit, which required payment in the amount of fifty percent (50%) of the Total, as well as documentation to support the rebuttal.

8. In a letter dated August 9, 2005, Company contested the audit results. Company failed to include both the required payment and documentation supporting its rebuttal, however, and this lawsuit followed. A true and correct copy of the August 9, 2005 letter is attached as Exhibit 6.

9. Company still has not paid the audit deficiency or submitted sufficient documentation to rebut the audit results.

10. In addition to the audit delinquency ($32,007.99), Company owes $8,546.82 for shortages discovered after the completion of the audit report, and $2,895.03 in estimated contributions for the period January 2006 through September 2006 during which time Company failed to submit remittance reports[1], for a total of at least $43,449.84 in delinquent contributions owed to the Pension Fund.

11. Company owes interest through October 31, 2006, in the amount of $5,912.89 on the unpaid pension contributions set forth in Paragraph 10.

---

[1] Estimate based on the average of <u>the last three consecutively filed</u> reports as follows:
    10/05 $370.56
    11/05 $594.44 (2 reports $308.80 & $285.64)
    12/05 <u>$00.00</u>   Report no work
        $965.00 divided by 3 = $321.67 x 9 months = $2,895.03

12. Company owes $8,689.96 in liquidated damages based on delinquent contributions in the amount of $43,449.84.

13. Company owes late fees in the amount of $213.12 for the period March 2004 through November 2004.[2]

14. Company also owes audit costs in the amount of $1,674.43. As a signatory to the Labor Agreements, Company is obligated to reimburse the Fund for the cost of a compliance audit.

15. When an employer fails to remit its contributions, the Fund loses the income that it could have earned by investing these contributions. Combining this loss of investment income with the requirement to continue to pay benefits will eventually affect the actuarial soundness of the Fund as well as deplete resources available to pay current and future retirement. Furthermore, the Fund incurs additional administrative expenses as a result of an employer's failure to pay its contributions. These added costs include the substantial time and expense involved in administrative efforts to collect the delinquent contributions and in having to manually process participant eligibility for benefits. These losses and added costs are not capable of precise determination.

---

[2] Detailed breakdown of $213.12 in late charges:
```
03/04    $37.10
04/04    $29.03
05/04    $33.68
06/04    $26.72
07/04    $22.69
08/04    $20.21
09/04    $16.26
10/04    $12.35
11/04    $15.08
         $213.12
```

16. I have executed this Declaration in support of Plaintiff's Motion for Summary Judgment against Defendant and request this Court to consider the same as proof of the allegations contained in the Complaint and other facts stated in this Declaration.

I declare under penalty of perjury in accordance with 28 U.S.C. §1746 that the foregoing is true and correct to the best of my knowledge, information and belief

Executed on: 10/30/06

_____
THOMAS MONTEMORE

174475-1                                  5