IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) |
| Plaintiff, | ) CIVIL ACTION NO. 05-1662 (ESH) |
| v. | ) ) |
| THE TROAST GROUP, INC. | ) ) |
| Defendant. | ) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE ISSUE IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Fund", "Pension Fund" or "Plaintiff"), by and through its legal counsel, Jennings Sigmond, P.C., pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of Civil Procedure for the United States District Court for the District of Columbia, submits this Statement Of Material Facts As To Which There Is No Genuine Issue in support of its Motion for Summary Judgment.

1.  The Pension Fund is a multiemployer employee pension benefit plan which provides retirement benefits to eligible participants and their beneficiaries (Montemore Decl., ¶2).

2.  On July 26, 2001, The Troast Group, Inc. ("Company") executed a collective bargaining agreement ("Labor Agreement") with the District Council No. 711, International Union of Painters and Allied Trades State of New Jersey ("Union") covering the May 1, 2000 through April 30, 2006. (Montemore Decl., ¶4; Exhibit 2; Complaint, ¶6).

3.  Union is a labor union and is affiliated with the International Painters and Allied Trades Pension Fund (Complaint, ¶6).

173386-1

4.  Company agreed to abide by the terms of the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Fund ("Plan") (Complaint, ¶7; Montemore Decl., ¶4; Exhibit 2, Article 10; Exhibit 3, Article VI; Exhibit 4, Article 10, §10.07).

5.  The Labor Agreement, Trust Agreement and Plan require Company to prepare and submit monthly remittance reports and contributions no later than the fifteenth (15th) day of the month following the month in which the work was performed. (Exhibit 2, Article 10; Exhibit 2, Article 8, §8.5; Exhibit 3, Article VI; Exhibit 4, Article 10, §10.12).

6.  The Labor Agreement, Trust Agreement and Plan provide Plaintiff with remedies when an employer fails to remit remittance reports or pay contributions. (Exhibit 2, Article 10, Exhibit 3, Article VI; Exhibit 4, Article 10, §10.12).

7.  Article VI of the Trust Agreement provides, in part, as follows

## ARTICLE VI
## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.* RATE OF CONTRIBUTIONS. In order effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and Employer. The rate of contribution shall at all times be covered by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan .....

\* \* \*

*Section 4.* DEFAULT IN PAYMENT. Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the

173386.1                                        2

payment was due to the date when payment is made, together with all expenses of collection (including attorneys fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees....

* * *

*Section 6.* AUDITS. The Trustees may at any time have an audit made by certified public accounts of the payroll, wage, and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports.... If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules of Regulations of the Pension Plan...as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

(Exhibit 3, Article VI.)

8. The Plan provides, at Section 10.12, as follows:

**Section 10.12 Collection of Delinquent Contributions.**

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to Sections 502(g)(2) of ERISA to enforce the Contributing Employer's obligation.

(b) In any action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

(1) the unpaid contributions.

(2) interest on the unpaid contributions, determined at the rate prescribed under Section 6621 of the Internal Revenue Code of 1954, as amended,

(3) liquidated damages equal to the greater of

(A) the amount of interest charges on the unpaid contributions, or

     B)  20 percent (higher percentage, if permitted by Federal or State law) of the unpaid contributions.

   (4)  reasonable attorneys' fees and costs of the action, and

   (5)  such other legal or equitable relief as the court deems appropriate.

  (c)  Nothing in this section shall be construed as a waiver or limitation on the Plan's or the Trustees' right to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

(Exhibit 4, Article 10, §10.12)

  9.  From time to time, Robert E. Moore, C.P.A. acts as Auditor for Pension Fund (Moore Decl., ¶1).

  10.  Robert E. Moore's responsibilities include examination of a contributing employer's documents and financial records to determine whether such employer has a fringe benefit contribution delinquency (Moore Decl., ¶1).

  11.  In the normal course of performing such an audit, the Fund provides Mr. Moore with a computerized printout of employee hours by month submitted to the Fund by the employer to be audited for the relevant audit period; a listing of the contribution rates applicable to the employer for the relevant audit period; and copies of the applicable collective bargaining agreement (Moore Decl., ¶2).

  12.  A complete audit of Company's payroll books and related records was performed by Mr. Moore and a final audit report was generated on June 2, 2005 covering the period January 1, 2001 through March 31, 2005 (Moore Decl., ¶3; Exhibit 8).

  13.  The audit revealed a delinquency in the amount of $32,007.99 (Moore Decl., ¶3; Exhibit 8).

14. In a letter dated July 21, 2005, Gary Meyers, the Fund Administrator, informed Company of the audit findings, and set a deadline of August 1, 2005 for Company to pay the outstanding contributions, interest, late fees, audit fees and liquidated damages in the amount of $54,608.63 ("Total") in full. (Montemore Decl., ¶7; Exhibit 5).

15. Mr. Meyers also gave Company the option to rebut the audit, which required payment in the amount of fifty percent (50%) of the Total, as well as documentation to support the rebuttal. (Montemore Decl., ¶7; Exhibit 5).

16. In a letter dated August 9, 2005, Company contested the audit results. (Montemore Decl., ¶8; Exhibit 6).

17. In the August 9, 2005 letter, Company failed to include both the required payment and documentation supporting its rebuttal. (Montemore Decl., ¶8; Exhibit 6).

18. As a result of Company's failure to pay the delinquencies discovered in the audit or otherwise resolve this matter, Plaintiff filed its Complaint on August 19, 2005 alleging that Company owed outstanding fringe benefit contributions, liquidated damages, interest, audit costs and late fees in the amount of $54,608.63. (Montemore Decl., ¶8; Complaint, ¶12).

19. Company failed to properly file an Answer and on October 25, 2005, the Clerk entered default against Company. (Docket Entry 6).

20. On November 10, 2005, Plaintiff filed its Motion for Default Judgment which was granted by Judge Ellen S. Huvelle on November 21, 2005. (Docket Entry 9).

21. On December 9, 2005, Defendant filed its Motions to Reopen Case and Vacate Default Judgment, which included Defendant's Verified Answer. (Docket Entries 14,15)

22. Plaintiff's opposed Defendant's Motions on December 22, 2005. (Docket Entry 16).

23. Judge Huvelle granted Defendant's motions on February 1, 2006. (Docket Entry 18).

173386.1                                    5

24. Since the reopening of this matter, the facts have remained unchanged. Defendant still has not paid the audit delinquencies or provided sufficient documentation to dispute the audit findings. (Montemore Decl., ¶9).

25. Based on the audit of Company's payroll books and related records performed by Robert E. Moore, shortages which were detected after the completion of the audit and estimates for periods when Company failed to submit reports, Company now owes contributions to the Fund in the amount at least $43,449.84 (Montemore Decl., ¶10).

26. Company owes interest through October 31, 2006, in the amount of $5,912.89 on the unpaid pension contributions set forth in Paragraph 26 (Exhibit 4, §10.12(b)(2); Montemore Decl., ¶11).

27. Interest is calculated in accordance with the fluctuating IRS interest rate (Exhibit 4, §8.05(b)(2)).

28. Section 10.12 (b)(3) of the Plan provides for the assessment of liquidated damages in an amount equal to the greater of the following: the amount of interest owed on the delinquent contributions, or twenty percent (20%) of the delinquent contributions. (Exhibit 4, §8.05(b)(3)).

29. Twenty percent (20%) of unpaid contributions ($43,449.84) is $8,689.96. Since this amount is greater than the interest amount, Company owes $8,689.96 in liquidated damages (Montemore Decl. ¶12).

30. Company owes late fees in the amount of $213.12 for the period March 2004 through November 2004. (Montemore Decl., ¶13; Exhibit 3, Article VI; Exhibit 4, Article 10, §10.12).

31. Company also owes audit costs in the amount of $1,674.43 (Exhibit 3, Art. VI, §6; Montemore Decl. ¶14).

32.     As a signatory to the Labor Agreement, Company is obligated to reimburse the Fund for the cost of a compliance audit (Exhibit 2, Article 10; Exhibit 3, Article VI, §6; Montemore Decl. ¶14).

33.     The Fund incurs additional administrative expenses as a result of an employer's failure to pay its contributions. These added costs include the substantial time and expense involved in administrative efforts to collect the delinquent contributions and in having to manually process participant eligibility for benefits (Montemore Decl., ¶15).

> Respectfully submitted,
>
> JENNINGS SIGMOND, P.C.
>
> BY: s/ Kent Cprek
> KENT CPREK
> Bar No. 478231
> SANFORD G. ROSENTHAL
> Bar No. 478737
> The Penn Mutual Towers, 16th Floor
> 510 Walnut Street, Independence Square
> Philadelphia, PA 19106-3683
> (215) 351-0615/0674
> Attorneys for the Fund

Dated: October 30, 2006

OF COUNSEL:
Shanna M. Cramer
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0674